UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE
MDD_GLSchambers@mdd.uscourts.gov

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0627 PHONE
(301) 344-8434 FAX



January 28, 2019

Stephen F. Shea, Esq.
801 Roeder Road, Suite 550
Silver Spring, MD 20910

Leah Golshani, Esq.
Special Assistant United States Attorney
Social Security Administration, Ofc. Of
General Counsel
6401 Security Blvd., Room 617
Baltimore, MD 21235

Subject: *Noel D. v. Comm'r of Soc. Sec.*[1]
Civil No.: 1:17-cv-03172-GLS

Dear Counsel:

Pending before this Court are Motions for Summary Judgment. (ECF Nos. 14,15). The Court must uphold the Social Security Administration ("SSA" or "the Agency")'s decision if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2016); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Chater*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* Upon review of the pleadings and the record, the Court finds that no hearing is necessary. L.R. 105.6. For the reasons set forth below, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration.

Plaintiff filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on April 4, 2014, alleging an onset of disability on March 22, 2013. (Tr. 29, 232-241, 263). Plaintiff's application was denied initially (August 7, 2014), and upon reconsideration (January 16, 2015), by the SSA. (Tr. 29). On February 11, 2015, Plaintiff requested a hearing, which was conducted on September 14, 2016 by Administrative Law Judge ("ALJ") Williams A. Kurlander. (Tr. 29, 47, 185). On January 13, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 29-41). The Appeals Council denied Plaintiff's request for review on August 28, 2017, making the ALJ's decision the final reviewable decision of the Agency. (Tr.1-5).

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

In deciding to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation process regarding disability, which is set forth in 20 C.F.R. §416.920. *See also Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ were as follows: step one, assessed whether Plaintiff had engaged in substantial gainful activity since the alleged disability onset date; step two, determined whether Plaintiff's impairments met the severity and durations requirements found in the regulations; step three, ascertained whether Plaintiff's medical impairment met or equaled an impairment listed in the regulations ("the Listings"); step four, analyzed whether Plaintiff could perform her past work, given the limitations caused by her impairments; and at step five, analyzed whether Plaintiff could perform any work. (Tr. 31-40). Because the first three steps did not yield a conclusive determination, the ALJ also assessed Plaintiff's residual functional capacity ("RFC")—i.e., the "most the claimant 'c[ould] still do despite' physical and mental limitations that affect[ed] her ability to work"—by considering all of Plaintiff's medically determinable impairments, regardless of their severity. *See Mascio*, at 635 (quoting 20 C.F.R. § 416.945(a)(1)). Per *Mascio*, Plaintiff bore the burden of proof through the first four steps of the sequential evaluation process. Upon making the requisite showing, the burden shifted to the Agency at step five to prove that Plaintiff could perform other work that "exist[ed] in significant numbers in the national economy," in light of her "[RFC], age, education and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

Here, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, bilateral knees osteoarthritis, foot/ankle disorder, fibromyalgia, migraines, anxiety, major depressive disorder, and bipolar affective disorder. (Tr. 31). Despite these impairments, the ALJ determined that Plaintiff retained the "RFC" to perform light work. (Tr. 34). Next, after evaluating the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff was unable to perform her past work as a daycare teacher. (Tr. 39). However, the ALJ ultimately found that she could perform several jobs existing in the national economy; therefore, Plaintiff was not disabled. (Tr. 40).

On appeal to this Court, Plaintiff advances two arguments. First, that the ALJ's holding does not comport with the Fourth Circuit's mandates in *Mascio v. Colvin*. Second, that the ALJ fails to explain how he considered "the frequency and duration of Plaintiff's migraine headaches" when he formulated her RFC. (ECF No. 14-1, pp. 5-8).

First, Plaintiff alleges that the although the ALJ found that she had moderate difficulties in concentration, persistence and pace, he failed to include any limitations related thereto in her RFC, as required by *Mascio*. The Fourth Circuit remanded *Mascio* for several reasons, including, the fact that the hypothetical posed to the vocational expert, and the RFC assessment, failed to include mental limitations other than unskilled work, even though the ALJ determined that the claimant had "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit held that an ALJ does not adequately account for a claimant's limitations in concentration, persistence, or pace by merely restricting hypothetical questions posed to the VE to simple, routine tasks or unskilled work. *Id.* at 638. The Fourth Circuit distinguished between a scenario where an individual is unable to perform simple tasks from another where the individual stays on task,

finding that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The Fourth Circuit also held that an ALJ's failure to include additional limitations in a claimant's RFC assessment is not erroneous, provided that the ALJ explains why a claimant's moderate difficulties in concentration, persistence, and pace did not warrant mention in that RFC assessment. To summarize, then, an ALJ who finds that a claimant has moderate difficulties in concentration, persistence and pace must either: (a) include appropriate limitations in the RFC that account for these difficulties, or (b) explain why no such limitations are necessary.

In this case, while the ALJ did find that Plaintiff's impairments met the Listings, I do think it necessary to explain more the analysis that the ALJ engaged in related to step three of the sequential evaluation process. As stated earlier, at step three of the sequential evaluation process, an ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listings found in sections 12.00 *et seq.* pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00. The relevant listings consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id*. at § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, an ALJ will find that a claimant meets the listed impairment. *Id*.

Paragraph B contains four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Id. at § 12.00(C). An ALJ uses the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §404.1620a(c)(2). An ALJ rates a claimant's degree of limitation in the first three areas, using the terminology: "none," "mild," "moderate," "marked," or "extreme." Id. at § 404.1620a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. See, e.g., 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.02, 12.06. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." Id. at § 12.00(C).

In addition, the functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." Id. at § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." Id. The regulations, however, offer little guidance on the meaning of "moderate" limitations. See Lewis v. Commissioner, Civ. No. SAG-16-3661, 2017 WL 2683948, at *2 (D. Md. June 21, 2017).

In this case, the ALJ did assess Plaintiff's mental impairments using the "special technique," and found that she had moderate limitations in concentration, persistence, or pace. (Tr.

33-34). In particular, the ALJ noted:

> The claimant testified she sleeps a lot for unknown reasons and that she experiences fatigue after a migraine. She reported difficulty with memory, completing tasks, concentration, and handling stress and changes in routine. She enjoys reading, playing computer games, can cook complete meals, drives almost daily, could care for her grandson, and stays busy. She scored 28/30 on a mini-mental status exam, showing normal cognitive functioning. She was attentive and responsive at the hearing, but I noted she seemed rather unemotional with a blunt affect during her testimony.

Despite these impairments, the ALJ ultimately determined that Plaintiff retained the "RFC" to:

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the work must have a sit stand option, by this I mean, an ability to change from a sitting position to a standing position every thirty minutes if desired, and vice-versa. That is, every thirty minutes, if the person is sitting and experiences back or other pain, they can stand and stretch in place and continue working in the standing position if desired. Similarly, every thirty minutes, if the person is standing and experiencing back or other pain, they can sit down to continue their work in a sitting position if desire, in order to alleviate their pain. The work must be unskilled; there can be no more than occasional interaction with coworkers and supervisors, but no interaction with more the general public; there can be no more than occasional use of ramps and stairs; there can be no more than occasional postural activity, but not crawling and no kneeling; there can be no work at exposed heights; there can be no more than occasional work around machinery; there can be no more than frequent fingering; and there can be no more than a "moderate" noise intensity level, as described in . . ..

(Tr. 34). In addition, the record shows that two hypotheticals were posed to the VE, one that accounted for Plaintiff's age, education, and past work, and focused on light work. The other hypothetical related to an off-task limitation. (Tr. 75-76, 79-80).

Urging against remand, the SSA cites to portions of the record that it believes demonstrate how the ALJ considered Plaintiff's limitations in concentration, persistence and pace, citing to Plaintiff's ability to: (a) play computer games, enjoy reading, drive, and cook meals; and (b) score 28/30 on her mini-mental status examination, which showed normal cognitive functioning. *See* ECF No. 15-1 at 5. The SSA then argues that the ALJ somehow "translated the broad functional area into specific work-related limitations appropriate for the RFC" by "thoroughly consider[ing] the medical and opinion evidence of record relevant to her mental functioning." *Id*. at 5-6. Next, the SSA argues that "Plaintiff has failed to show that additional work-related limitations were warranted in the RFC." ECF No. 15-1 at 7.

I agree that remand is appropriate in this case because I do not find that the ALJ's analysis satisfies *Mascio's* dictates. Although the ALJ says that the Plaintiff had "moderate difficulties" in concentration, persistence, and pace, *see* (Tr. 33), the last four sentences of his assessment suggest that she has no difficulties in concentration, persistence, and pace. *Id*. In addition, the ALJ never mentioned to the VE a hypothetical person with difficulties in concentration, persistence, and pace, nor did the ALJ adopt the off-task limitation hypothetical. (Tr. 75-81). Next, there is no mention at all in Plaintiff's RFC of her mental limitations. Thus, from this record, I cannot determine how/whether the ALJ determined that Plaintiff can stay "on task." I do not find that the ALJ adequately explained how Plaintiff's RFC assessment actually takes into account her "moderate difficulties" in concentration, persistence, or pace. *See* (Tr. 33-39). Furthermore, the ALJ's RFC analysis entirely fails to address Plaintiff's pace or ability to sustain work over an eight-hour workday given her **mental** limitations. *See* (Tr. 34). Alternatively, if the ALJ's RFC analysis did properly address Plaintiff's moderate limitations with respect to concentration, the ALJ's failure to account for her moderate limitations in persistence or pace runs afoul of *Mascio*. Accordingly, I am unable to ascertain whether the ALJ truly believed Plaintiff had moderate difficulties in concentration, persistence, and pace, or how those difficulties restrict her RFC to perform "light work." (Tr. 34).

On remand, the ALJ should provide adequate explanation of how Plaintiff's RFC assessment accounts for her "moderate difficulties" in concentration, persistence, or pace or, alternatively, why her moderate difficulties at step three of the sequential process do not translate into a limitation in her RFC. In remanding for additional analysis, I express no opinion as to whether the ALJ's finding that Plaintiff is not entitled to benefits is correct.

Plaintiff also asserts that the ALJ erred by failing to explain how he considered "the frequency and duration of [her] migraine headaches" when he formulated her RFC. (ECF No. 14-1, pp. 5-8). Because the case is being remanded on other grounds, I need not address this argument. On remand, the ALJ should review his analysis related to Plaintiff's migraines.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 14), is DENIED and Defendant's Motion for Summary Judgment, (ECF No. 15), is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely,

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge